In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00048-CV
______________________________


DEBORAH HIX HENDERSON F/K/A DEBORAH HIX, Appellant
 
V.
 
MICHAEL R. LOVE, Appellee


                                              

On Appeal from the 115th Judicial District Court
 Marion County, Texas
Trial Court No. 0400170


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Chief Justice Morriss


O P I N I O N
            In 1999, Deborah Hix Henderson agreed to purchase from Michael R. Love a house in
Avinger, Marion County, Texas, under an executory contract of sale, also known as a contract for
deed, which financed the principal sum of $38,500.00. At the time of the contract, neither the
contract nor any law required an annual accounting statement by Love. In 2001, changes to Section
5.077 of the Texas Property Code became effective which required Love, beginning in January 2002,
to provide Henderson with an annual report, briefing her on certain financial details of the contract
and imposing "liquidated damages" of $250.00 per day after January 31 for each year such report was
not provided. Apparently, Love failed to provide such a report. In 2004, Henderson sued Love and
his co-owner, Sylvia Allison,


 alleging they were "jointly and severely [sic]" liable for the daily
"liquidated damages" because of that failure. The trial court determined that, as applied in this case,
the section was unconstitutional. Henderson appeals the resulting summary judgment that she take
nothing from Love.
            We reverse the summary judgment and remand this case for further proceedings because we
hold Section 5.077 of the Texas Property Code is not unconstitutional as properly applied, given that
Chapter 41 of the Texas Civil Practice and Remedies Code also applies, conditioning and limiting
the potential recovery under Section 5.077. We come to that conclusion in three logical steps:
            (1) Section 5.077, standing alone, is at least constitutionally suspect;
            (2) Chapter 41 applies, conditioning and limiting recovery under Section 5.077; and
            (3) The statutory scheme which includes Section 5.077 and Chapter 41 is constitutional.
(1) Section 5.077, Standing Alone, Is at Least Constitutionally Suspect
            At the time the Love-Henderson contract was signed, Section 5.077 did not apply to it. The
statute applied to only those executory contracts of sale involving land in certain economically
depressed counties near the Texas-Mexico border. It also provided sanctions for its violation
proportionate to the size of a contract's monthly payments and required that advance notice be given
a seller before such sanctions could be exacted. The 2001 amendments dramatically changed all of
that.
            Love contends the application of statutes and the associated penalties, as amended after the
contract was in effect, impaired his contract in violation of the Texas Constitution. Because of
Section 5.077's retroactivity,


 the trial court granted Love a summary judgment on the basis that
Section 5.077, as applied to this case, violated Article I, Section 16 of the Texas Constitution. That
constitutional provision outlaws any "bill of attainder, ex post facto law, retroactive law, or any law
impairing the obligation of contracts." Tex. Const. art. I, § 16. For the purpose of this discussion,
we will briefly examine the prohibition of a statute "impairing the obligation of contracts" and will
also touch on Article I, Section 13 of the Texas Constitution prohibiting excessive fines.
            (a) Does Pre-2005 Section 5.077 Impair the Obligation of this Contract?
            As it was before the 2005 changes, Section 5.077 provided, in pertinent part,
(a) The seller shall provide the purchaser with an annual statement


 in January of
each year for the term of the executory contract. If the seller mails the statement to
the purchaser, the statement must be postmarked not later than January 31.
 
. . . .
 
(c) A seller who fails to comply with Subsection (a) is liable to the purchaser for:
(1) liquidated  damages  in  the  amount  of  $250  a  day  for  each  day  after
January 31 that the seller fails to provide the purchaser with the statement;
and
(2) reasonable attorney's fees.

Tex. Prop. Code Ann. § 5.077.


 Act of May 18, 2001, 77th Leg., R.S., ch. 693, § 1, 2001 Tex. Gen.
Laws 1326.
            The Love-Henderson contract was signed June 16, 1999. The Texas Property Code, as it then
existed, required that a seller provide an annual accounting report only when the real property was
in a county meeting three criteria: a per capita income averaging twenty-five percent below the state
average, an unemployment rate twenty-five percent above the state average, and a location within
200 miles of an international border. Tex. Prop. Code Ann. § 5.091, Act of May 27, 1995, 74th
Leg., R.S., ch. 994, § 3, 1995 Tex. Gen. Laws 4983–84. Effective September 1, 2001, the Code was
amended, deleting the income and border requirements, thereby making Section 5.077 applicable
state-wide. Act of May 18, 2001, 77th Leg., R.S., ch. 693, § 1, 2001 Tex. Gen. Laws 1319 (also
renumbering Section 5.091 as Section 5.062). At the same time, the statutory sanctions were
dramatically changed. Before the change, the sanctions were set at fifteen percent of the monthly
payments on the contract; afterward, they became "liquidated damages" set at $250.00 per day.
            When the constitutionality of a retroactive statute is challenged, we start with a presumption
that a legislative enactment is constitutional. Barshop v. Medina Co. Underground Water
Conservation Dist., 925 S.W.2d 618, 629 (Tex. 1996). We presume the Legislature "understands
and correctly appreciates the needs of its own people, that its laws are directed to problems made
manifest by experience, and that its discriminations are based upon adequate grounds." Smith v.
Davis, 426 S.W.2d 827, 831 (Tex. 1968) (quoting Tex. Nat'l Guard Armory Bd. v. McCraw, 132
Tex. 613, 126 S.W.2d 627, 634 (1939)). The wisdom or expediency of a law is for the Legislature
to determine, not this Court. Enron Corp. v. Spring Indep. Sch. Dist., 922 S.W.2d 931, 934 (Tex.
1996); Smith, 426 S.W.2d at 831. Further, the party challenging the constitutionality of a statute
bears the burden of demonstrating that the enactment fails to meet constitutional requirements. 
Spring Branch Indep. Sch. Dist. v. Stamos, 695 S.W.2d 556, 558 (Tex. 1985).
            Any statute that releases a part of the obligation to perform the contractual obligation, or that
to any extent amounts to a material change, or modifies it, unconstitutionally impairs the contract
under Article I, Section 16 of the Texas Constitution. Cardenas v. State, 683 S.W.2d 128, 131 (Tex.
App.—San Antonio 1984, no writ). The "obligation of a contract," for purposes of the constitutional
prohibition of impairment of contractual obligations, is defined as the law which binds the parties
to perform their agreement. Price Pfister, Inc. v. Moore & Kimmey, Inc., 48 S.W.3d 341 (Tex.
App.—Houston [14th Dist.] 2001, pet. denied). The laws in effect at the time a contract is executed
are considered part of that contract. Hutchings v. Slemons, 141 Tex. 448, 174 S.W.2d 487, 490 
(1943); Langever v. Miller, 124 Tex. 80, 76 S.W.2d 1025 (1934)). "[W]hen a legislative act
pertaining to the judicial enforcement of contract rights reaches the point where its effect is to impair
the obligation of contracts, it is void." Slemons, 174 S.W.2d at 490.
            Article I, Section 29 of the Texas Constitution declares that government does not have the
general power to impair the rights protected by Article I, Section 16 of the Texas Constitution. 
Travelers' Ins. Co. v. Marshall, 124 Tex. 45, 76 S.W.2d 1007, 1011 (1934). This expressly limits
the state's police power. Id. The prohibition against impairing the obligation of contracts is
"emphatic, unambiguous and without exception; it applies alike to all contracts and protects all
obligations of contracts from destruction or impairment by subsequent legislation." Id.
            Section 5.077 as it existed between September 1, 2001, and September 1, 2005, has been
examined in the recently issued Flores v. Millennium Interests Ltd., No. 04-1003, 2005 Tex. LEXIS
733 (Tex. Sept. 30, 2005). Flores arose from three certified questions posed to the Texas Supreme
Court by the United States Court of Appeals for the Fifth Circuit: (1) whether the statutory
liquidated damages were recoverable when a timely accounting statement provided part, but not all,
of the information required by Section 5.077(b); (2) whether the purchaser was required to prove
actual harm or injury to recover the liquidated damages; and (3) whether Section 5.077's "liquidated
damages" fell within the definition of "exemplary damages" in Chapter 41 of the Texas Civil
Practice and Remedies Code so a Section 5.077 claimant had to comply with Chapter 41 of the
Texas Civil Practice and Remedies Code in order to recover liquidated damages under Section 5.077.
            The Flores court, in a 6-3 decision, concluded that, when a Section 5.077 annual statement
was timely provided, the omission of some required information from the statement did not trigger
the liquidated damages of Section 5.077. The court also held that the Section 5.077 liquidated
damages constituted a penalty and that Section 5.077 did not require a purchaser to prove any actual
damages as a predicate to recovery. Because its answers allowed Flores no recovery, the court
decided it was unnecessary to answer the question concerning applicability of Chapter 41 of the
Texas Civil Practice and Remedies Code. The issue of Section 5.077's constitutionality was not
before the Texas Supreme Court.
            As amended in 2001, the language of Section 5.077—considered alone—could support
"liquidated damages" in excess of $750,000.00


 through August 31, 2005. That figure stands in stark
relief to this contract, which originally financed $38,500.00. Section 5.077 could thus exact on this
contract a penalty grossly in excess of the value of the entire contract—a penalty of approximately
three-quarters of a million dollars on a contract which financed little more than five percent of that
potential penalty. Thus, the effect could be not only to consume the entire value of the contract, but
also to leave in its place a potential liability in the range of $700,000.00. We conclude that Section
5.077, as applied here, is constitutionally suspect as a possible impairment of the obligation of the
Love-Henderson contract.
            (b) Does Section 5.077 Impose an Excessive Fine?
            While not argued to the trial court or to this Court, Article I, Section 13 of the Texas
Constitution prohibits the imposition of "excessive fines." A "fine" under Section 13 includes a civil
penalty. Pennington v. Singleton, 606 S.W.2d 682, 690 (Tex. 1980); State v. Galveston, Houston,
& San Antonio Ry. Co., 100 Tex. 153, 97 S.W. 71, 78 (1906), rev'd on other grounds, 210 U.S. 217
(1908). A fine becomes constitutionally excessive only in an extraordinary case in which the fine
"becomes so manifestly violative of the constitutional inhibition as to shock the sense of mankind." 
Pennington, 606 S.W.2d at 690 (quoting State v. Laredo Ice Co., 96 Tex. 461, 73 S.W. 951, 953
(1903)). The wide latitude the state has in imposing fines is exceeded and denies due process "only
where the penalty prescribed is so severe and oppressive as to be wholly disproportioned to the
offense and obviously unreasonable." Pennington, 606 S.W.2d at 690 (quoting St. Louis, Iron
Mountain & S. Ry. Co. v. Williams, 251 U.S. 63, 66–67 (1919)); see Owens-Corning Fiberglas Corp.
v. Malone, 972 S.W.2d 35, 44–48 (Tex. 1998) (due process analysis of punitive damages).
            Pennington found the pre-1979 treble damages scheme of Section 17.50(b) of the Texas
Deceptive Trade Practices Act did not impose a constitutionally excessive fine. In reaching its
conclusion, the court recited that the recovery "increased in a fixed proportion to" the actual loss and
noted that "the amount of liability bore some relation to the offense." See Pennington, 606 S.W.2d
at 691. In the case at hand, there is no relation between the so-called "liquidated damages" of
Section 5.077 and any actual damages—which are not required under Section 5.077. Also, it is
difficult to see any relation between the offense—failing to provide an annual financial report—and
the potential liability under Section 5.077 as it was before the 2005 amendments. Section 5.077, as
it was, is also constitutionally suspect as potentially imposing an excessive fine.
            Thus, we find the 2001–05 version of Section 5.077, standing alone, constitutionally suspect. 
We need not decide its constitutionality, however, because Section 5.077 does not stand alone.
(2)      Chapter 41 Applies, Conditioning and Limiting Recovery of Section 5.077's "Liquidated 
           Damages"
            On September 1, 1995, when Section 5.077 was first effective, and on September 1, 2001,
when it was amended to make it applicable state-wide and to provide the liquidated damages
questioned here, Chapter 41 of the Texas Civil Practice and Remedies Code was in existence in
much its current form. See Tex. Civ. Prac. & Rem. Code Ann. §§ 41.001–.013 (Vernon 1997 &
Supp. 2005). And, by its terms, Chapter 41 applies to a Section 5.077 claim.
            Chapter 41 broadly "applies to any action in which a claimant seeks damages relating to a
cause of action." Tex. Civ. Prac. & Rem. Code Ann. § 41.002(a). It limits "damages that may be
awarded in an action subject to this chapter, including an action for which damages are awarded
under another law of this state." Tex. Civ. Prac. & Rem. Code Ann. § 41.002(b) (emphasis added). 
Notably, Chapter 41 expressly declares that it will control in any conflict with any other state law,
except four statutes not relevant here. Tex. Civ. Prac. & Rem. Code Ann. § 41.002(c), (d).
            More to the point, Chapter 41 also covers exemplary damages, which it defines as "any
damages awarded as a penalty." Tex. Civ. Prac. & Rem. Code Ann. § 41.001(5). As has recently
been made clear, the "liquidated damages" recoverable under Section 5.077 of the Texas Property
Code constitute a penalty. Flores, 2005 Tex. LEXIS 733, at *7. Thus, the Section 5.077 "liquidated
damages" fall squarely within Chapter 41's definition of exemplary damages. See id. (Brister, J.,
dissenting). Therefore, within the plain language of Chapter 41, it applies to Section 5.077
"liquidated damages."
            Even if the plain language of Chapter 41 did not require us to conclude that Chapter 41 limits
Section 5.077 recoveries, the generally accepted rules of statutory interpretation would lead us there. 
A penal statute, such as Section 5.077, should be strictly construed. Brown v. De la Cruz, 156
S.W.3d 560 (Tex. 2004). We interpret a statute to avoid absurd conclusions or unjust discrimination
if the statute is subject to a different, more reasonable interpretation. C & H Nationwide, Inc. v.
Thompson, 903 S.W.2d 315, 322 n.5 (Tex. 1994). "Unless there is no alternative, a statute will not
be interpreted so as to lead to a foolish or absurd result." McKinney v. Blankenship, 154 Tex. 632,
282 S.W.2d 691, 698 (1955).
            If possible, we construe statutes to avoid constitutional infirmities. Marcus Cable Assocs.,
L.P. v. Krohn, 90 S.W.3d 697, 706 (Tex. 2002); In re Bay Area Citizens Against Lawsuit Abuse, 982
S.W.2d 371, 380 (Tex. 1998); see also Tex. Gov't Code Ann. § 311.021(1) (Vernon 2005). We
do this because we presume the Legislature intended compliance with state and federal constitutions. 
Brady v. Fourteenth Court of Appeals, 795 S.W.2d 712, 715 (Tex. 1990).
            Thus, we hold Chapter 41 applies to Section 5.077 claims.
(3) The Statutory Scheme Which Includes Section 5.077 and Chapter 41 Is Constitutional
            Chapter 41 provides that, before exemplary damages—which include Section 5.077
"liquidated damages"—may be recovered, more-than-nominal actual damages


 must be awarded to
the claimant.


 Tex. Civ. Prac. & Rem. Code Ann. § 41.004(a). Chapter 41 also limits such
exemplary damages to no more than the greater of (a) $200,000.00, or (b) any noneconomic damages
found by a jury not to exceed $750,000.00, plus double the amount of economic damages. Tex. Civ.
Prac.  &  Rem.  Code  Ann.  §  41.008(b).  Those  restrictions  would  dramatically  limit  the
Section 5.077 penalty and impose as a condition precedent that actual damages be proven, thus
making Section 5.077 clearly constitutional as it fits within the legislative scheme.
 
 
 
 
 
            Since Section 5.077, in light of the applicable Chapter 41, is constitutional as applied here, 
the summary judgment was improper and must be reversed. Since our holding cannot dispose of the
case, we remand this case to the trial court for further proceedings consistent with this opinion.



                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          September 7, 2005
Date Decided:             November 30, 2005